Moshie Solomon, Esq.
LAW OFFICES OF MOSHIE SOLOMON, P.C.
One University Plaza, Suite 412
Hackensack, New Jersey 07601
Telephone: (201) 705-1470
Facsimile: (201) 705-1472

– and –

Jonathan L. Flaxer, Esq. (Admitted *pro hac vice*)
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
437 Madison Avenue
New York, New York 10022
Telephone: (212) 907-7300
Facsimile: (212) 754-0777

*Co-Counsel to Debtor Benjamin Jeffrey Ashmore*

Robert L. Herbst, Esq. (Admitted *pro hac vice*)
HERBST LAW PLLC
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone: (646) 543-2354
Facsimile: (888) 482-4676

*Counsel to Benjamin Ashmore, Plaintiff-Debtor,*
*in Ashmore v. CGI Group and CGI Federal,*
*11-cv-8611(AT/JC) (S.D.N.Y.)*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>BENJAMIN JEFFERY ASHMORE,<br><br>                Debtor. | Chapter 7<br><br>Case No. 13-17450 (VFP) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**ORDER ESTIMATING CLAIM NUMBER 4 FILED BY THE**
**UNITED STATES DEPARTMENT OF EDUCATION UNDER**
**<u>BANKRUPTCY CODE §§ 502(c) AND 105(a)</u>**

Benjamin Jeffrey Ashmore, debtor (the "Debtor") in the captioned chapter 7 case (the "Case"), by and through his undersigned counsel, submits this memorandum of law in support of his motion (the "Motion") for entry of an order estimating the contingent claim (the "Claim") of the United States Department of Education ("DOE") filed in this Case against the Debtor's estate (the "Estate") under Bankruptcy Code §§ 502(c) and 105(a). In support thereof, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.  The DOE has filed a proof of claim in this case for the entire balance due and owing under two student loans that were jointly consolidated by the Debtor and his ex-wife in 2003. This Claim is contingent in amount and liability due to the facts that (i) the Debtor is not in default on the note underlying the Claim, and (ii) the Debtor is jointly liable on the note with his ex-wife. Further, since the possibility exists that the Debtor may never default on the note and the loan may either be repaid in full or forgiven in its entirety in 20 to 30 years (or longer) from now, the only way to fix the actual amount of this Claim would be to keep the Case open until such time that the Debtor either defaults (which may never occur) or alternatively makes all payments in 20 to 30 years (or longer), which would unduly delay the administration of this case. As such, the claim of the DOE is ripe for estimation under Bankruptcy Code §§ 502(c) and 105(a), and should be estimated at zero because (i) the DOE has no current legal recourse against the Debtor for the Claim, and as such could not be successful in any state court action for the debt underlying the Claim, and the (ii) Debtor acknowledges that the debt underlying the Claim is non-dischargeable under Bankruptcy Code § 523(a)(8), so that the Debtor and his ex-wife will always be personally liable for such debt, and the DOE will not be prejudiced if the Claim is estimated at $0 in this Case solely for the purpose of distribution from the Estate.

2

**BACKGROUND**

2. On April 8, 2013, the Debtor filed a voluntary Chapter 7 bankruptcy petition *pro se* in this Court.

3. On November 18, 2013, the Debtor received his discharge, and on November 22, 2013, the Court entered a final decree closing the Case.

4. On March 15, 2016, upon motion of Barbara Edwards (the "Trustee"), the chapter 7 trustee herein, the Court reopened the Case.

5. On March 29, 2016, the Clerk of the Court set June 27, 2016 as the last date to file proofs of claim in this Case.

6. On May 19, 2016, the DOE filed a proof of claim in this Case, which the Clerk of the Court designated on the claims register for this Case as claim number 4. A copy of the Claim is annexed as Exhibit "A" to the Certification of Moshie Solomon in Support of this Motion (the "Solomon Certification"). By the Claim, the DOE asserts that the Debtor currently owes the amount of $144,203.99 arising from two student loans that the Debtor and his ex-wife had separately obtained from the DOE prior to July 23, 2003 and consolidated on that date under the terms and conditions that are attached to the documentation to the Claim[1] (together, the "Student Loan"). The Debtor and his ex-wife are jointly and severally liable for repayment of the Student Loan.

7. The Debtor has an agreement with the DOE to repay the Student Loan under an Income Based Repayment plan (the "IBR Plan"). A copy of the most recent Income Driven Repayment Plan Request (the "IBR Agreement"), which the DOE requires to be certified annually by the Debtor, is annexed as Exhibit "B" to the Solomon Certification. The IBR Plan is

---

[1] We note that the supporting documentation annexed to the Claim is deficient in that the entire note including the full terms and conditions of the note is not attached.

a 25 year repayment plan with monthly payments that are limited to 15% of a borrower's discretionary income. *See* IBR Agreement, § 9. Under the terms of the IBR Plan, "discretionary income" is defined as the amount by which a borrower's adjusted gross income exceeds 150% of the poverty guideline amount for the borrower's state of residence and family size. Id. Therefore, if the borrower's adjusted gross income is less than 150% of the poverty guideline, the borrower's qualifying monthly payment on the loan is zero. Under the IBR Plan, if the loan is not repaid in full after the borrower has made the equivalent of 25 years of qualifying monthly payments (which, as noted above, include months when no cash payment is made) and that many years have elapsed, any remaining debt will be forgiven. *See* IBR Agreement, § 10. In any event, if the borrower's income in any given year is more than the 150% of the poverty guideline, or if the borrower leaves the IBR Plan for any reason besides default, the borrower will not pay more than the standard repayment plan (the "SRP"), which is a fixed monthly payment over a repayment period of 30 years for Direct and Federal Consolidation Loans. *See* IBR Agreement, § 10.

8.  In accordance with the terms of the IBR Plan, the Debtor is current on his obligations under the Student Loan, and the Claim does not allege otherwise. If the Debtor remains in the IBR Plan and continues to make all qualifying monthly payments, the balance of the Student Loan, if any, will be forgiven in approximately 20 years. If the Debtor must pay the Student Loan under the SRP, the balance of the student loan will be satisfied over a repayment period of 30 years from the date he begins payments under the SRP.

## ARGUMENT

**I.  The Claim is Ripe for Estimation Under Bankruptcy Code §§ 502(c) and 105(a).**

9.  The Debtor seeks to have estimated the Claim for the purpose of allowance and distribution under the Bankruptcy Code. This Court has the statutory authority to estimate

claims under Bankruptcy Code §§ 105(a) and 502(c).

10. Bankruptcy Code § 502(c) specifically authorizes estimation for the purpose of allowance. *See* 11 U.S.C. § 502(c) ("There shall be estimated for purpose of allowance under this section—any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . .").

11. Bankruptcy Code § 502(c) serves two purposes. First, it removes the necessity of waiting to resolve issues of liability and of amounts owed, by permitting anticipation, and corresponding estimation, of likely outcomes. Second, it promotes fair distributions to creditors, by requiring that uncertain claims be assessed realistically. *See Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir. 1992) ("This section of the Code serves at least two purposes. First, it is designed to avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions. By so doing, the trustee can more rapidly determine the payout to each creditor who, in the meantime, receives no interest on its claim. Second, Bankruptcy Code § 502(c)(1) is designed to promote a fair distribution to creditors through a realistic assessment of uncertain claims.").

12. Several courts have expressly relied on Bankruptcy Code § 502(c) to estimate claims for purposes of distribution. *See, e.g., In re Trident Shipworks, Inc.*, 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000) (stating that a bankruptcy court "has discretion to determine the appropriate method of estimation, especially the purpose of the estimation," and stating that it is "well established that the estimation proceeding may be used ... to determine the allowed amount for distribution purposes"); *In re C.F. Smith & Assoc.*, 235 B.R. 153, 159 (Bankr. D. Mass. 1999) ("[a] section 502(c) estimation is often employed for purposes other than adjudicating the merits

5

of claim, such as to establish voting rights or determine a plan's feasibility. In some cases courts have estimated the value of a claim for all purposes, including distribution.").

13. The Bankruptcy Code does not provide procedures or guidelines for estimation. However, the Third Circuit has ruled that bankruptcy judges may use "whatever method is best suited to the particular contingencies at issue." *Bittner v. Borne Chemical Co.*, 691 F.2d 134, 135 (3d Cir.1982). "In estimating claims pursuant to § 502(c), a bankruptcy court 'is bound by the legal rules which may govern the ultimate value of the claim. For example, when the claim is based on an alleged breach of contract, the court must estimate its worth in accordance with accepted contract law.'" *In re G-I Holdings, Inc.*, 323 B.R. 583, 598-99 (Bankr. D.N.J. 2005) *quoting Bittner* at 135. The court is of course bound by "the legal rules which may govern the ultimate value of the claim" and the court must determine the value of the claim according to its best estimate of the claimant's chances of ultimately succeeding in a state court action. *Bittner* at 135. "It is not inappropriate to value a party's claim at zero where the claim is contingent and where the bankruptcy court finds that the party probably would not succeed on the merits in a state court action. As recognized by the Third Circuit in *Bittner,* 'the estimation process protects the interests of other creditors in not having their distributions diminished by allowing a claim whose contingency may never occur.'" *In re Kaplan*, 186 B.R. 871, 874 (Bankr. D.N.J. 1995), quoting *Bittner* at 136.

14. Moreover, Bankruptcy Code section 105(a) grants bankruptcy courts considerable latitude in implementing Bankruptcy Code section 502(c). See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). Accordingly, courts have engaged in a variety of expeditious procedures such as reviewing written submissions in lieu of a hearing and holding estimation hearings. See, e.g., 170 B.R. at 517 (estimating a claim "based upon . . . written submissions" of

facts in lieu of "mak[ing] findings of fact after [a] hearing"); In re Lane, 68 B.R. 609, 609, 613 (Bankr. D. Haw. 1986) (estimating a claim "having reviewed the files and exhibits submitted, and considered the arguments of counsel").

15. The Debtor does not dispute that assuming he earns sufficient amounts pursuant to the IBR Plan, he would be required to make payments in accordance therewith. It is undisputed, however, that the Student Loan was not in default as of the Petition Date, and is not in default as of the date of this Motion.  Since the Debtor (i) has not violated the terms of the IBR Plan, (ii) is jointly liable with his ex-wife on the Student Loan, and (iii) is current as to all his obligations under the Student Loan, the DOE's claim is contingent as to liability and amount and is the type of claim that is ripe for estimation under Bankruptcy Code § 502(c).

16. Moreover, as explained above in Para. 7, since the Debtor is in an IBR Plan, it is entirely possible that the DOE will forgive the balance of the Student Loan, if any, at the conclusion of the term of the loan, regardless of how much the Debtor has paid towards the loan. Since the the IBR Plan contemplates such a scenario, the actual amount of the Claim cannot be fixed until either (i) the Debtor has defaulted under the terms of the Student Loan, (ii) the Debtor has repaid the entirety of the Student Loan under the SRP, or (iii) the IBR Plan has been completed and the balance of the Student Loan, if any, has been forgiven.  Since none of these scenarios has presented itself to date, and the possibility exists that the Debtor may never default on the Student Loan and the loan may either be repaid in full or forgiven in its entirety in 20 to 30 years (or longer) from now, the only way to fix the actual amount of this Claim would be to keep the Case open until such time that the Debtor either defaults (which may never occur) or alternatively completes the SRP payments or IBR Plan payments in 20 to 30 years (or longer) . Waiting for any of these outcomes to pass would unduly delay the administration of this Case, as

7

the Trustee would have to wait many, many years to fix the amount of the Claim and close this case.

### II. The Claim Must Be Estimated at Zero.

17. Since the claim is contingent and the fixing of the amount of the Claim would unduly delay the administration of the Case, this Court should estimate this Claim now under Bankruptcy Code § 502(c). The Debtor respectfully submits that the Claim should be estimated at $0. As set forth above, the Student Loan is current, and the Claim does not allege otherwise. The DOE has no current legal recourse against the Debtor for the balance of the Student Loan, and as such could not be successful in any state court action for the Student Loan. *See Kaplan* at 878 (holding that since a creditor would most likely would not succeed on a state court action, the credior's claim should be estimated at zero pursuant to 11 U.S.C. § 502(c)(1)). If the Trustee does ultimately realize funds to distribute to creditors in this case, and the Claim is allowed in the full amount, then the DOE would obtain a windfall at the expense of other creditors and the Debtor. Further, the Debtor acknowledges that the Student Loan is non-dischargeable under Bankruptcy Code § 523(a)(8), so that the Debtor and his ex-wife will always be personally liable for the Student Loan, and the DOE will not be prejudiced if the Claim is estimated at $0 in this Case solely for the purpose of distribution from the Estate.

### **NOTICE**

18. The Debtor has provided notice of this Motion in accordance with Fed. R. Bankr. P. 2002(a) to (i) the Office of the United States Trustee, (ii) the DOE, and (iii) all entities that have filed notices of appearances in this case. The Trustee believes that such notice is appropriate under the circumstances of this Motion.

19. No previous application for the relief requested herein has been made to this or any other Court.

**WHEREFORE**, for all the reasons stated herein, the Debtor respectfully requests that the Court (i) enter an Order estimating the Claim of the DOE at $0 under Bankruptcy Code §§ 502(c) and 105(a) and (ii) grant such other and further relief as is just and proper.

Dated:  Hackensack, New Jersey
June 8, 2016

LAW OFFICES OF MOSHIE SOLOMON, P.C.

/s/ Moshie Solomon
Moshie Solomon, Esq.
One University Plaza, Suite 412
Hackensack, New Jersey 07601
Telephone: (201) 705-1470
Facsimile:  (201) 705-1472

- and –

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
Jonathan L. Flaxer, Esq.
(Admitted *pro hac vice*)
437 Madison Avenue
New York, New York 10022
Telephone: (212) 907-7300
Facsimile:  (212) 754-0777

*Co-Counsel to Debtor Benjamin Jeffrey Ashmore*

HERBST LAW PLLC
Robert L. Herbst, Esq.
(Admitted *pro hac vice*)
420 Lexington Avenue, Suite 300
New York, New York  10170
Telephone: (646) 543-2354
Facsimile: (888) 482-4676

*Counsel to Benjamin Ashmore, Plaintiff-Debtor, in Ashmore v. CGI Group and CGI Federal, 11-cv-8611(AT/JC) (S.D.N.Y.)*